UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

FORT MYERS DIVISION

| | |
|---|---|
| GAUDENCIO GARCIA-CELESTINO ) <br> RAYMUNDO CRUZ-VICENCIO, ) <br> RAUL ISMAEL ESTRADA-GABRIEL, ) <br> DANIEL FERRO-NIEVES, ) <br> JOSE MANUEL FERRO-NIEVES, ) <br> FELIPE ANGELES GALLARDO, ) <br> SIMON GUZMAN-ROMERO, and ) <br> FRANCISCO MATA-CRUZ individually and ) <br> on behalf of all other persons similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> RUIZ HARVESTING, INC. ) <br> BASILISO RUIZ and ) <br> CONSOLIDATED CITRUS ) <br> LIMITED PARTNERSHIP, ) <br> ) <br> Defendants. | CIVIL ACTION <br> No. <br><br><br> **CLASS ACTION** |

**COMPLAINT FOR DAMAGES, DECLARATORY RELIEF,
COSTS OF LITIGATION, AND ATTORNEY'S FEE**

**PRELIMINARY STATEMENT**

1. This is an action by eight Mexican nationals who lawfully entered the United States to

perform labor picking citrus fruit for Defendants Ruiz Harvesting, Inc. and Basiliso Ruiz in

central Florida on the operations of Defendant Consolidated Citrus Limited Partnership at

various times during the 2007-08 or 2008-09 harvest seasons.  The Plaintiffs bring this action to

recover minimum wages due them under the Fair Labor Standards Act, 29 U.S.C. §§201, *et seq.*

In addition, the Plaintiffs seek redress on behalf of themselves and their fellow workers for the Defendants' violations of the minimum wage provisions of the Florida Constitution, Art.10 §24. Finally, the Plaintiffs seek damages for the Defendants' breaches of numerous provisions of their work contract with the Plaintiffs and their co-workers.  These contractual breaches include the Defendants' failure to provide wage and transportation benefits and to maintain payroll records as promised in the workers' contracts and as required by applicable federal regulations.  Among other things, the Defendants failed to fully reimburse the Plaintiffs for the cost of their inbound and outbound transportation between the Defendants' worksite and the workers' homes in Mexico.

2. Along with other Mexican nationals, Plaintiffs Raymundo Cruz-Vicencio and Raul Ismael Estrada-Gabriel entered the United States pursuant to special H-2A visas for employment with the Defendants during the 2007-08 Florida citrus harvest.  In addition, all Plaintiffs entered the United States with a similar H-2A visa to pick fruit for the Defendants during the 2008-09 Florida citrus harvest.  The Defendants paid the Plaintiffs and their fellow H-2A workers wages below the rates required by the FLSA, the minimum wage provisions of the Florida Constitution and applicable H-2A regulations.   The Plaintiffs and the other class members were paid only their piece-rate earnings, which routinely fell below the wage levels dictated by the FLSA, the minimum wage provisions of the Florida Constitution and the H-2A regulations.

3. The Plaintiffs seek an award of money damages and declaratory relief to make them whole for damages suffered due to the Defendants' violations of law.

## JURISDICTION

4.  Jurisdiction is conferred upon this Court by 29 U.S.C. §216(b), this action arising

under the FLSA; by 28 U.S.C. §1331, this action arising under the laws of the United States and

presenting state law claims that implicate significant federal issues; and by 28 U.S.C. §1367

providing supplemental jurisdiction over the common law claims.  This Court has supplemental

jurisdiction over the claims arising under state law because these claims are so related to the

federal claims that they form part of the same case or controversy.

5.  Declaratory relief is authorized pursuant to 28 U.S.C. §§2201 and 2202.

## VENUE

6.  Venue is proper in this district pursuant to 28 U.S.C. §§1391 (b) and (c).

## PARTIES

7.  The Plaintiffs are each citizens of Mexico who reside in the Mexican states of

Guanajuato and Veracruz.  Plaintiffs Raymundo Cruz-Vicencio and Raul Ismael Estrada-Gabriel

were admitted to the United States on a temporary basis pursuant to 8 U.S.C.

§1101(a)(15)(H)(ii)(a) to hand-pick citrus fruit for the Defendants during the 2007-08 Florida

citrus harvest.  Each of the Plaintiffs were admitted to the United States on a temporary basis

pursuant to 8 U.S.C.  §1101(a)(15)(H)(ii)(a) to hand-pick citrus fruit for the Defendants during

the 2008-09 Florida citrus harvest.   At all times relevant to this action, each of the Plaintiffs was

employed in the production of goods for interstate commerce, within the meaning of the FLSA.

-3-

8.   Defendant Ruiz Harvesting, Inc. is a Florida Corporation headquartered in Okeechobee, Florida.  At all times relevant to this action, Ruiz Harvesting, Inc. was a farm labor contractor in that, for a fee, it recruited, solicited, hired, furnished, or employed migrant agricultural workers.  At all times relevant to this action, Defendant Ruiz Harvesting, Inc. employed the Plaintiffs and the other class members within the meaning of the FLSA, 29 U.S.C. §203(d).  At all times relevant to this action, Defendant Ruiz Harvesting, Inc. was an employer of the Plaintiffs and the other class members within the meaning of 20 C.F.R. §655.100(b).

9.   Defendant Basiliso Ruiz  is a resident of Okeechobee, Florida.   He is the owner, and president of Ruiz Harvesting, Inc.  At all times relevant to this action, Defendant Basiliso Ruiz managed the day-to-day affairs and acted on behalf of Ruiz Harvesting, Inc.   At all times relevant to this action, Defendant Basiliso Ruiz was a farm labor contractor in that, for a fee, he recruited, solicited, hired, furnished, or employed migrant agricultural workers.  At all times relevant to this action, Defendant Basiliso Ruiz employed the Plaintiffs and the other class members within the meaning of the FLSA, 29 U.S.C. §203(d).  At all times relevant to this action, Defendant Basiliso Ruiz was an employer of the Plaintiffs and the other class members within the meaning of 20 C.F.R. §655.100(b).

10.   Defendant Consolidated Citrus Limited Partnership is a Florida limited partnership that maintains its principal offices in Fort Myers, Florida.  Consolidated Citrus Limited Partnership is one of the nation's largest citrus growers and operates citrus groves in Highlands, DeSoto, Charlotte, Lee, Hendry, Okeechobee, Polk and Martin Counties.  At all times relevant to this action, Consolidated Citrus Limited Partnership employed the Plaintiffs and the other class

members within the meaning of the FLSA, 29 U.S.C. §203(d).  At all times relevant to this

action, Consolidated Citrus Limited Partnership was an employer of the Plaintiffs and the other

class members within the meaning of 20 C.F.R. §655.100(b).

## CLASS ACTION ALLEGATIONS

11.  All claims set forth in Counts II and III are brought by the Plaintiffs on behalf of

themselves and all other similarly situated persons pursuant to Rule 23(b)(3) of the Federal Rules

of Civil Procedure.

12. The Plaintiffs seek to represent a class consisting of all H-2A workers who were

admitted to the United States pursuant to pursuant to temporary labor certifications issued to

Defendant Ruiz Harvesting, Inc.. and who were employed to pick citrus fruit during the 2007-08

and/or 2008-09 Florida citrus harvests on the operations of Defendant Consolidated Citrus

Limited Partnership as members of labor crews operated by Defendants Ruiz Harvesting, Inc.

and/or Basiliso Ruiz.

13. The class members are so numerous and so geographically dispersed as to make

joinder impracticable.  The precise number of individuals in the class is known only to the

Defendants.  However, the class is believed to include over 190 individuals.  The class is

comprised of indigent migrant agricultural workers who are citizens of Mexico and who reside in

rural areas within the central and eastern portion of that nation.  The class members are not fluent

in the English language and are unfamiliar with the American judicial system.  The relatively

small size of the individual claims and the indigence of the class members makes the

maintenance of separate actions by each class member economically infeasible.

14. There are questions of law and fact common to the class. These common legal and factual questions include whether the Defendants breached the terms of their employment contracts, as embodied in the clearance orders filed by Ruiz Harvesting, Inc., by failing to provide the class members wage and transportation benefits as mandated by their contracts and the federal regulations implementing the H-2A program.

15. The Plaintiffs' claims are typical of those of the other class members and these typical, common claims predominate over any questions affecting only individual class members. All class members were subjected to the unlawful kickback practices described herein. The Plaintiffs have the same interests as do other members of the class in recovering the wages they were forced to unlawfully kick back to Basiliso Ruiz and will vigorously prosecute these interests on behalf of the class.

16. The Plaintiffs will fairly and adequately represent the interests of the class. The Plaintiffs' interests are in no way antagonistic or adverse to those of the other class members.

17. The Plaintiffs' counsel are experienced in handling actions by H-2A workers to enforce their rights under their employment contracts and have handled numerous class actions in the federal courts, including actions on behalf of H-2A workers. The Plaintiffs' counsel are prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the class members under Rule 23(b)(3).

18. A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia*:

a.   The common issues of law and fact, as well as the relatively small size of the individual class members' claims, generally $3000 or less, substantially diminish the interest of members of the class in individually controlling the prosecution of separate actions;

b.   Many members of the class are unaware of their rights to prosecute these claims and lack the means or resources to secure legal assistance;

c.   There has been no litigation already commenced against the Defendants by the members of the class to determine the questions presented;

d.   It is desirable that the claims be heard in this forum because the Defendants do business in this district and the cause of action arose in this district; and

e.   A class action can be managed without undue difficulty because the Defendants have regularly committed the violations complained of herein, and are required to maintain detailed records concerning each member of the class.

## FACTS

19.   An agricultural employer in the United States may import aliens to perform labor of a temporary nature if the U.S. Department of Labor certifies that (1) there are insufficient available workers within the United States to perform the job, and (2) the employment of aliens will not adversely affect the wages and working conditions of similarly-situated U.S. workers.  8 U.S.C. §§1101(a)(15)(H)(ii)(a) and 1188 (a)(1).  Aliens admitted in this fashion are commonly referred

to as "H-2A workers."

20.  Agricultural employers seeking the admission of H-2A workers must first file a temporary labor certification application with the U.S. Department of Labor.  20 C.F.R. §§655.101(a)(1) and (b)(1).  This application must include a job offer, commonly referred to as a "clearance order" or "job order," complying with applicable regulations, which is used in the recruitment of both U.S. and H-2A workers.  20 C.F.R. §655.101(b)(1).  These regulations establish the minimum benefits, wages, and working conditions that must be offered in order to avoid adversely affecting similarly-situated U.S. workers.  20 C.F.R. §§655.0(a)(2), 655.102(b), and 655.103.  Among these terms are the following:

a.  Payment to all workers of at least the applicable adverse effect wage rate for every hour or portion thereof worked during a pay period.  20 C.F.R. §§655.102(b)(9)(i) and (ii).  The applicable adverse effect wage rate for Florida was $8.56 per hour from the beginning of the 2007-08 harvest through February 25, 2008.  The adverse effect wage rate for Florida from February 26, 2008 through the conclusion of the 2008-09 harvest was $8.82 per hour;

b.  An assurance that the employer will keep accurate and adequate records with respect to the workers' earnings and the hours actually worked by the worker and the daily starting and stopping time for work.  20 C.F.R. §655.102(b)(7)(i);

c.  An assurance that the employer will furnish to the worker each payday an hours and earnings statement showing the hours of work offered, the hours actually worked and the piece-work units produced daily.  20 C.F.R. §655.102(b)(8).

-8-

d.      An assurance that the employer will abide by the requirements of 20 C.F.R. §653.501, including the requirements of 20 C.F.R. §653.501(d)(4), mandating compliance with state minimum wage laws;

e.      An assurance that the employer will provide or pay for transportation costs between the worker's home and the employer's jobsite and subsistence *en route* for those individuals who complete the first 50 percent of the contract period. 20 C.F.R. §655.102(b)(5)(i); and

f.      An assurance that the employer will provide or pay for transportation costs to the worker's home and subsistence *en route* for those individuals who complete the contract period. 20 C.F.R. §655.102(b)(5)(ii).

21.      Prior to the commencement of the 2007-08 Florida and 2008-09 citrus harvests, Defendant Consolidated Citrus Limited Partnership hired Defendants Ruiz Harvesting, Inc. and Basiliso Ruiz to furnish farmworkers to assist in harvesting citrus fruit in its central Florida groves.

22. Because of the lack of available documented workers in the area of their operations, and at the direction of Consolidated Citrus Limited Partnership, Defendants Ruiz Harvesting, Inc. and Basiliso Ruiz filed applications to employ temporary foreign workers through the H-2A program. Separate applications were filed for the 2007-08 and 2008-09 harvest seasons. These applications listed Ruiz Harvesting, Inc. as the employer of the guest workers and identified the Florida Fruit & Vegetable Association as Ruiz Harvesting's agent. The Ruiz Harvesting

temporary labor certification application for the 2007-08 harvest sought admission of 94 workers for employment from November 12, 2007 through June 30, 2008. The Ruiz Harvesting temporary labor certification application for the 2008-09 harvest sought admission of 127 workers for employment from November 27, 2008 through July 15, 2009.

23. As part of the temporary labor certification applications described in Paragraph 22, Ruiz Harvesting, Inc. and Basiliso Ruiz submitted to the United States Department of Labor clearance orders which contained a certification that the orders described the actual terms and conditions of employment being offered and contained all material terms and conditions of the job, as required by 20 C.F.R. §653.501(d)(3). The essential terms of the clearance orders were dictated by federal regulations at 20 C.F.R. §§653.501, 655.102, and 655.103.

24. The United States Department of Labor accepted the temporary labor certification applications and clearance orders submitted on behalf of Ruiz Harvesting, Inc. as described in Paragraphs 22 and 23 and circulated the clearance orders to local job service offices in an effort to recruit U.S. workers to fill the positions offered. When these efforts failed, the Department of Labor certified shortages of labor for all of the openings described in the Ruiz Harvesting clearance orders. The United States Customs and Immigration Services (USCIS) of the Department of Homeland Security issued H-2A visas to fill the manpower needs described in the Ruiz Harvesting clearance orders.

25. The Ruiz Harvesting clearance orders described in Paragraph 23, explicitly and implicitly, incorporated the Department of Labor regulations at 20 C.F.R. §655 Subpart B, including the terms described in Paragraph 20 of this Complaint.

-10-

26. The Defendants recruited the Plaintiffs and the other class members from Mexico to fill the positions offered in the Ruiz Harvesting clearance orders.

27. The clearance orders served as the work contracts between the Defendants and the H-2A workers recruited (including the Plaintiffs), pursuant to 20 C.F.R. §655.102(b)(14).  The 2007-08 Ruiz Harvesting clearance order governed the employment between the Defendants and all other members of the class, including the Plaintiffs Raymundo Cruz-Vicencio and Raul Ismael Estrada-Gabriel, who were employed as members of the Ruiz Harvesting, Inc./Basiliso Ruiz crew during the 2007-08 harvest season. The 2008-09 Ruiz Harvesting clearance order governed the employment between the Defendants and all other members of the class, including the Plaintiffs Raymundo Cruz-Vicencio and Raul Ismael Estrada-Gabriel, who were employed as members of the Ruiz Harvesting, Inc./Basiliso Ruiz crew during the 2008-09 harvest season.

28. Following their recruitment, the Plaintiffs and the other class members traveled at their own expense from their respective homes to Monterrey, Nuevo Leon, Mexico to apply for H-2A visas. Each worker was required to purchase a passport, into which the H-2A visa was to be affixed.  In addition, each worker paid approximately $100 for issuance of an H-2A visa to obtain employment pursuant to the clearance order, as well as a visa application fee of approximately $115.  The workers also incurred lodging expenses while they remained in Monterrey, waiting for their H-2A visa applications to be processed.  At the U.S.-Mexico border, the Plaintiffs and the other class members each paid U.S. immigration officials a fee of $6 for issuance of Form I-94 as a prerequisite for entering the United States.

29. The Plaintiffs and the other class members incurred transportation and subsistence

expenses in traveling from their homes to Monterrey, and from Monterrey to the Defendants'

jobsite in Florida.

30.   The expenses incurred by the Plaintiffs and the other class members in preparation

for working for the Defendants, as described in Paragraphs 28 and 29 were primarily for the

benefit of the Defendants.  The Plaintiffs and the class members were not reimbursed for these

expenses during the first week of their employment with the Defendants.

31.   The Plaintiffs and the other class members worked picking citrus fruit with the Ruiz

Harvesting, Inc./Basiliso Ruiz crew on the operations of Consolidated Citrus Limited Partnership

during the 2007-08 and/or 2008-09 harvest seasons, performing the tasks set out in the Ruiz

Harvesting clearance orders.   The Plaintiffs and the other class members were compensated for

this labor on a piece-rate basis, based on the number of tubs of fruit they harvested.

32.   In order to record the amount of compensable time the Plaintiffs and the other class

members worked during the 2007-08 and/or 2008-09 harvests, the Defendants utilized an

electronic timekeeping system owned and maintained by Defendant Consolidated Citrus Limited

Partnership.  The data collected by the electronic timekeeping system were provided to Ruiz

Harvesting, Inc., for use in the preparation of the class members' weekly paychecks and the

payroll records relating to their work.

33.   Utilizing the data collected by the electronic timekeeping system described in

Paragraph 32, Ruiz Harvesting Inc. prepared payroll records and paychecks with detachable stubs

with respect to the labor of the Plaintiffs and the other class members during the 2007-08 harvest

season;  and prepared payroll records and direct deposits with pay stubs with respect to the labor

of the Plaintiffs and the other class members during the 2008-09 harvest seasons.  The compensable time worked each workweek as reflected on the payroll records and the workers' check and direct deposit stubs were derived from the data extracted from Consolidated Citrus Limited Partnership's electronic timekeeping system.

34. The piece-rate earnings of the Plaintiffs and the other class members on many occasions totaled less than the amount due under the applicable adverse effect wage rate, 20 C.F.R. §655.102(b)(9).  At times, these piece-rate earnings were less than the amount due under the minimum wage provisions of the FLSA, 29 U.S.C. §206(a) and/or the minimum wage provisions of the Florida Constitution, Art.10 §24.   When this occurred, the payroll software utilized by Ruiz Harvesting, Inc. automatically added additional money to the workers' piece-rate earnings so as to boost these earnings to the then-applicable adverse effect wage rate.  Any such supplemental money appeared on the check/direct deposit stub as a separate line item labeled "Minimum Wage H2A."

35. At the beginning of both the 2007-08 and 2008-09 harvest seasons, Defendant Basiliso Ruiz met with the H-2A workers to be employed and explained to them the piece-rate system to be used in computing their compensation.  Ruiz also explained to the workers that their weekly paychecks might contain moneys labeled "Minimum Wage H2A." Ruiz explained that any worker receiving "Minimum Wage H2A" would be required to return this money to Ruiz or his staff upon request.

36. Throughout the 2007-08 and 2008-09 citrus harvests, the Plaintiffs and other members of the Ruiz Harvesting, Inc./Basiliso Ruiz crew received paychecks and/or direct

deposits including sums labeled "Minimum Wage H2A" on the check/direct deposit stubs. On each payday, those workers whose wages included "Minimum Wage H2A" were required to kickback these "Minimum Wage H2A" sums in cash to Ruiz or one of his lieutenants, including "Pedro" (last name unknown) or "Manuel" (last name unknown at this time).  After these kickbacks, the workers received only their piece-rate earnings for the week.

37.  As a result of the practices described in Paragraph 36, the Plaintiffs and the other class members did not receive the applicable adverse effect wage rate, as promised by the Ruiz Harvesting clearance orders and required by 20 C.F.R. §655.102(b)(9)(ii)(A).

38.  As a result of the practices described in Paragraph 36, the Plaintiffs and the other class members did not receive the pay period earnings at least equal to the minimum wage required by the FLSA and the minimum wage provisions of the Florida Constitution, Art.10 §24.

39.  As a result of the practices described in Paragraph 36, the payroll records maintained by the Defendants with respect to the Plaintiffs and the other class members were inaccurate, because they did not accurately show the wages actually paid, but instead included the "Minimum Wage H2A" pay that the workers were required to kickback to Ruiz.

40.  As a result of the practices described in Paragraph 36, the wage statements set out in the check/direct deposit stubs provided to the Plaintiffs and the other class members were inaccurate, because they did not accurately show the wages actually paid, but instead included the "Minimum Wage H2A" pay that the workers were required to kickback to Ruiz..

41. The Defendants failed to pay for the full cost of transportation costs between the homes of the Plaintiffs and the other class members and the Defendants' jobsite and subsistence

*en route* for those class members who completed the first 50 percent of the contract period, in violation of the clearance orders and 20 C.F.R. §655.102(b)(5)(i).

42.   The Defendants failed to provide or pay for the full transportation costs home and subsistence costs *en route* for the Plaintiffs and the other class members who completed the contract period, in violation of the clearance orders and 20 C.F.R. §655.102(b)(5)(ii).

## COUNT I

## (FAIR LABOR STANDARDS ACT)

43. This count sets forth a claim for declaratory relief and damages by the Plaintiffs for the Defendants' violations of the minimum wage provisions of the FLSA.

44. The Defendants violated the minimum wage provisions of the FLSA, 29 U.S.C. §206(a), by failing to pay Plaintiffs Raymundo Cruz-Vicencio and Raul Ismael Estrada-Gabriel at least $5.85 for every compensable hour each workweek during the 2007-08 citrus harvest.

45.   The Defendants violated the minimum wage provisions of the FLSA, 29 U.S.C. §206(a), by failing to pay the Plaintiffs at least $6.55 for every compensable hour each workweek during the 2008-09 citrus harvest.

46. The violations of the FLSA as set out in Paragraphs 44 and 44 resulted in part from the Defendants' failure to supplement the Plaintiffs' piece-rate earnings to a rate equal to or exceeding the FLSA minimum wage as a result of the Defendants' practice of requiring the Plaintiffs to kick back any sums above their-piece-rate earnings for the workweek as set out in Paragraph 36.

-15-

47. The violations of the FLSA as set out in Paragraphs 44 and 45 resulted in part from the Defendants' failure to reimburse the Plaintiffs during their first week of employment for facilities primarily benefitting the Defendants, including the Plaintiffs' passports, lodging expenses in Monterrey, visa-related expenses, fees for issuance of Form I-94, and the full costs of the Plaintiffs' travel from their homes to the area of the Defendants' jobsite.

48.   As a consequence of the Defendants' violations of the FLSA as set out in this count, each of the Plaintiffs is entitled to his unpaid minimum wages, plus an additional equal amount in liquidated damages, pursuant to 29 U.S.C. §216(b)

## COUNT II

## (BREACH OF CONTRACT)

49. This count sets forth a claim by the Plaintiffs and the other members of the class for damages arising from the Defendants' breaches of the employment contract, as embodied in the clearance orders filed on behalf of Ruiz Harvesting, Inc. and under which the Plaintiffs and the other class members were employed on the operations of Consolidated Citrus Limited Partnership during the 2007-08 and/or 2008-09 harvest seasons.

50.   The terms and conditions of employment contained in the Ruiz Harvesting clearance orders constituted employment contracts between the Defendants and the H-2A workers, the terms of which were supplied by federal regulations at 20 C.F.R. §§653.501, 655.102 and 655.103.

51.   The Defendants breached their employment contract with the Plaintiffs and the other

class members by providing terms and conditions of employment that were materially different from those described in the clearance order, including the following:

a.    The workers were not paid at least the applicable adverse effect wage rate for their labor, as set out in Paragraphs 36 and 37;

b.    The Defendants did not reimburse the workers for costs they incurred for transportation and subsistence between their respective homes and the jobsite, both prior to and following the contract period of employment, as set out in Paragraphs 30, 41 and 42;

c.    The Defendants did not provide subsistence payments to the workers during their travel between their homes and the Defendants' jobsite, both prior to and following the contract period for employment, as set out in Paragraphs 41 and 42.

d.    The Defendants failed to comply with the minimum wage provisions of the FLSA and the Florida Constitution, employment-related laws, as set out in Paragraphs 36 and 38;

e.    The Defendants failed to maintain payroll records accurately reflecting the workers' net earnings as a result of the omission of data relating to the kickbacks by the workers to Defendant Ruiz, as set out in Paragraphs 36 and 39; and

f.    The wage statements furnished by the Defendants to the workers on payday did not accurately reflect the workers' net earnings, because of the omission of data showing the amounts kicked back to Defendant Ruiz, as set out in Paragraphs 36 and 40.

52.  The Defendants' breaches of their employment contract with the Plaintiffs and the other  class members have caused these workers grave financial and other serious injuries.

## COUNT III

## (MINIMUM WAGE PROVISIONS OF FLORIDA CONSTITUTION)

53.  This count sets forth a claim for declaratory relief and damages by the Plaintiffs and the other members of the class for the Defendants' violations of the minimum wage provisions of the Florida Constitution.

54.  Throughout the period the Plaintiffs and the other class members were employed by the Defendants,  they were not paid by the  Defendants in compliance with the minimum wage provisions of the Florida Constitution, Article 10 §24.  Among other things, the Plaintiffs and the other class members were required to kick back a portion of their minimum wages to Defendant Ruiz, as set out in Paragraph 36.  In addition,  the Defendants failed to reimburse the Plaintiffs during their initial week of employment for pre-employment expenses incurred primarily for the Defendants' benefit, as set out in Paragraphs 30 and 41, resulting in the Plaintiffs and the other class members receiving less than the mandated state minimum wage for their labor.

55.  As a result of the Defendants' violations of the minimum wage provisions of the Florida Constitution as described above, the Plaintiffs and the other members of the class are entitled to recover the amount of their respective unpaid minimum wages, and an equal amount as liquidated damages, pursuant to Art. 10 §24 (e) of the Florida Constitution.

-18-

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs request that this Court enter an order:

a.   Certifying this case as a class action in accordance with Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims set forth in Counts II and III;

b.   Declaring that the Defendants violated the minimum wage provisions of the FLSA, as set forth in Count I;

c.   Declaring that the Defendants breached their employment contracts with the Plaintiffs and the other class members as set forth in Count II;

d.   Declaring that the Defendants violated the minimum wage provisions of the Florida Constitution, as set forth in Count III;

e.   Granting judgment in favor of the Plaintiffs and against the Defendants, jointly and severally, on the Plaintiffs' FLSA claims as set forth in Count I, and awarding each of the Plaintiffs the amount of his unpaid minimum wages and an equal amount as liquidated damages;

f.   Granting judgment in favor of the Plaintiffs and the other class members and against the Defendants, jointly and severally, on the contract claims as set forth in Count II and awarding the Plaintiffs and the class members their actual and compensatory damages;

g.   Granting judgment in favor of the Plaintiffs and the other class members and against the Defendants, jointly and severally, on these workers' claims under the minimum wage provisions of the Florida Constitution as set forth in Count III and awarding each of them his unpaid minimum wages and an equal amount in liquidated damages;

h.     Awarding the Plaintiffs a reasonable attorney's fee pursuant to 29 U.S.C. §216, Fla.

Stat. §448.08 and Art. 10, §24 of the Florida Constitution;

i.     Awarding the Plaintiffs the costs of this action; and

j.     Granting such further relief as this Court deems just and appropriate.


Respectfully submitted,


Victoria Mesa
Florida Bar Number 076569
Migrant Farmworker Justice Project
508 Lucerne Avenue
Lake Worth, Florida  33460-3819
Telephone:     (561) 582-3921
Facsimile:     (561) 582-4884
e-mail:        victoria@Floridalegal.Org


Gregory S. Schell
Florida Bar Number 287199
Migrant Farmworker Justice Project
508 Lucerne Avenue
Lake Worth, Florida  33460-3819
Telephone:     (561) 582-3921
Facsimile:     (561) 582-4884
e-mail:        greg@Floridalegal.Org


*Attorneys for Plaintiffs*