UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

GAUDENCIO GARCIA-CELESTINO *et al.*
and individually, and on behalf of all other
persons similarly situated,

        Plaintiffs,

v.                                 Case No.  2:10-cv-542-FtM-99DNF

RUIZ HARVESTING, INC.,
BASILISO RUIZ, and
CONSOLIDATED CITRUS LIMITED
PARTNERSHIP,

        Defendants.

_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiffs' Motion for Declaration of a

Class Action and Supporting Memorandum of Law (Dkt. 55), Defendant Consolidated Citrus

Limited Partnership's Memorandum in opposition (Dkt. 65), and Plaintiffs' Reply.  The

Court, having considered the motion, response, reply, and record evidence, concludes that

the motion should be granted.

## BACKGROUND[1]

This is an action by 38 migrant farm workers employed by Defendants Ruiz

Harvesting, Inc. ("Ruiz Harvesting"), Basiliso Ruiz ("Ruiz"), and Consolidated Citrus

Limited Partnership ("CCLP") to pick citrus fruit in central Florida in the 2006-07, 2007-08,

---

[1] The facts are taken from the amended complaint (Dkt. 34), however the Court makes no ruling on
the merits of these facts.

2008-09, and/or 2009-10 harvest seasons.    Plaintiffs bring this action, on behalf of themselves and their co-workers who picked citrus fruit for Defendants during these periods of time, to secure and vindicate rights afforded them by the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§1801, *et seq.* ("AWPA"), the Fair Labor Standards Act, 29 U.S.C. §§201, *et seq.* ("FLSA"), the minimum wage provisions of the Florida Constitution, federal regulations governing the temporary foreign agricultural worker program, and common law.

Specifically, Plaintiffs claim that Defendants failed to pay minimum wages as required by the FLSA and Florida Constitution with regard to their employment picking oranges during the 2006-07, 2007-08, 2008-09, and/or 2009-10 citrus harvests.  Ruiz Harvesting employed agricultural "guest workers" recruited from Mexico pursuant to the temporary agricultural work visa program, commonly known as the "H-2A program." 8 U.S.C. §1188.[2] These guest workers ("H-2A workers") had written contracts of employment with Ruiz Harvesting that included specific representations regarding wages, hours, and working conditions.  Specifically, as a condition of importing agricultural guest workers, Ruiz filed detailed job descriptions with the United States Department of Labor.  These documents, commonly referred to as "clearance orders," described the job terms, most of which were dictated by federal regulations governing the H-2A program.  These clearance orders served

---

[2] The H-2A program authorizes importation of foreign nationals to perform seasonal agricultural jobs when U.S. workers are unavailable.  *See Arriaga v. Fla. Pac. Farms, L.L.C.,* 305 F.3d 1228, 1232-33 (11th Cir. 2002) for an overview of the H-2A program.

as the employment contracts between Ruiz Harvesting and the H-2A workers.  *See* 20 C.F.R. §653.501, 655.102, and 655.103.

Plaintiffs' amended complaint alleges that during their employment, Defendants breached the terms of the clearance orders by failing to pay them the promised wage for all hours worked.  Plaintiffs allege that Defendants also failed to reimburse them for costs they incurred primarily for the benefit of Defendants to the extent that these costs reduced Plaintiffs' earnings for their first week of work below the required hourly rate.  In sum, Plaintiffs contend that Defendants breached the terms of the clearance orders in three respects as follows: (1) Defendants required Plaintiffs to kick back the supplemental wages designed to boost their weekly earnings; (2) Defendants automatically deducted an hour from each picker's recorded work time during the 2007-08 and 2008-09 harvests to account for travel time between the grove check-in gate and the work site; and (3) Defendants failed to fully reimburse Plaintiffs for their inbound and outbound transportation, visa, and subsistence expenses.

Plaintiffs ("Representative Plaintiffs")[3] seek to represent a class consisting of:

> All temporary foreign workers ("H-2A workers") who were employed pursuant to temporary labor certifications issued to Ruiz Harvesting, Inc. for work during the 2007-08, 2008-09 and/or 2009-10 Florida citrus harvests.

---

[3] The Representative Plaintiffs include all of the named plaintiffs except Plaintiff Francisco Suarez-Galan, who is a lawful permanent resident and is presenting claims under the Migrant and Seasonal Agricultural Worker Protection Act.

The alleged class is comprised of approximately 286 guest workers residing in several different states in Mexico. Plaintiffs seek class action status on Counts V and VI of their amended complaint. Count V is a breach of contract claim with respect to Defendants' violations of the clearance orders. Count VI is a claim under the Florida Constitution's minimum wage provisions.

Defendant CCLP opposes Plaintiffs' motion for declaration of a class action with respect to Counts V and VI of the amended complaint.[4]

## ANALYSIS OF CLASS CERTIFICATION

The question of whether to certify a class is left to the sound discretion of the district court. *Babineau v. Federal Exp. Corp.,* 576 F.3d 1183, 1189 (11th Cir. 2009). The party moving for class certification has the burden of proof to establish the propriety of the class certification. *Busby v. JRHBW Realty, Inc.,* 513 F.3d 1314, 1322 (11th Cir. 2008) (citing *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1187 (11th Cir. 2003)). As a prerequisite to certification, the putative class representatives must have Article III standing to pursue the claims on which class-related relief is sought. *Id.* Also, in order to certify a class, all the requirements of Fed.R.Civ.P. 23(a) must be met, as well as one requirement of Fed.R.Civ.P. 23(b). *Luna v. Del Monte Fresh Produce (Southeast), Inc.,* 2009 WL 4366953, at *1 (11th Cir. Dec. 3, 2009).

---

[4] Defendants Ruiz Harvesting and Ruiz did not file a response to the instant motion.

The four elements required for class certification under Rule 23(a) are: (1) numerosity, the class is so numerous that joinder of all members is impracticable; (2) commonality, there are questions of law or fact common to the class; (3) typicality, the claims or defenses of the class are typical; and (4) adequacy, the class representative will fairly and adequately protect the interests of the class. *Id.* (citing Fed.R.Civ.P. 23(a)); *Hines v. Widnall,* 334 F.3d 1253, 1255-56 (11th Cir. 2003); *Franze v. Equitable Assurance,* 296 F.3d 1250, 1253 (11th Cir. 2002).

The district court is required to evaluate the requirements of a class certification even if not seriously contested by the defendants. *Valley Drug Co.,* 350 F.3d at 1188. The court should not determine the merits of the claims at the class certification stage, however, the court can consider the merits of the case "to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Heffner v. Blue Cross and Blue Shield of Ala., Inc.,* 443 F.3d 1330, 1337 (11th Cir. 2006) (quoting *Valley Drug,* 350 F.3d at 1188 n. 15).

## STANDING

Initially, the Court must determine that Plaintiffs have standing pursuant to Article III to raise each class claim. *Busby,* 513 F.3d at 1321 (citing *Klay v. Humana, Inc.,* 382 F.3d 1241, 1250 (11th Cir.2004)). "Without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class." *Hines*, 334 F.3d at 1256.

Plaintiffs allege that Defendants employed them as H-2A workers during the 2007-08, 2008-09 and/or 2009-10 Florida citrus harvests, and that they were subject to unlawful practices that form the breach of contract claim and Florida minimum wage claim.

After a review of the allegations in the amended complaint, the Court concludes that the putative class representatives have standing to pursue Counts V and VI of the amended complaint.

CCLP argues that Plaintiffs cannot establish standing because it did not employ Plaintiffs. Whether CCLP constitutes Plaintiffs' "employer", however, is more appropriate at the summary judgment stage. Indeed, such a determination is factually intensive. In other words, this determination does not need to be made at the class certification stage, where the Court is to accept Plaintiffs' substantive allegations as true.

## REQUIREMENTS UNDER RULE 23(a)

### I.   Numerosity and impracticability of joinder

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Plaintiffs seeking class certification do not need to know the exact size of the proposed class. *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004). While the size of the proposed class is relevant to a court's determination, other factors such as "the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits" should also be considered. *Id.* (quotations omitted).

CCLP does not challenge Plaintiffs' assertion that Rule 23(a)'s numerosity requirement would be met with a putative class of 286 fruit harvesters.

After reviewing the allegations of the amended complaint, the Court agrees that the joinder of potentially 286 individual migrant farm workers, who reside in various locations in Mexico, who do not speak English fluently, and who lack familiarization with the American legal system would be burdensome. Therefore, the Court concludes that Plaintiffs have satisfied Rule 23(a)'s numerosity requirement.

## II.     Common questions of law and fact

The commonality requirement typically "refers to the group of characteristics of the class." *Prado-Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1279 (11th Cir. 2000). To satisfy the commonality requirement, "a class action must involve issues that are susceptible to class wide proof." *Cooper v. Southern. Co.,* 390 F.3d 695, 714 (11th Cir. 2004), *overruled on other grounds*, (quoting *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir. 2001)). However, it is not necessary that all members of the class have identical claims. *Prado-Steiman,* 221 F.3d at 1279 n. 14. Commonality, like typicality, focuses "on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members." *Id.* at 1278.

The Court concludes that a sufficient nexus clearly exists here. Plaintiffs assert common questions of fact among the class members, who are all H-2A workers that Defendants employed during the 2007-08, 2008-09 and/or 2009-10 Florida citrus harvests. The common questions include whether Defendants failed to pay the contractual adverse

effect wage rate by forcing them to kick back the minimum wage build-up compensation to Ruiz, whether Defendants deducted one hour from the lapsed recorded time for each worker for travel time, and whether Defendants did not fully reimburse workers for their pre-employment, post-employment, and subsistence expenses.

Accepting Plaintiffs' substantive allegations as true, the Court concludes that Plaintiffs have satisfied the commonality requirement under Rule 23(a). *See Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619, 624-25 (M.D. Fla. 2010); *Castillo v. N & R Services of Cent. Florida, Inc.*, 2008 WL 1959691, at *3 (M.D. Fla. May 1, 2008); *Mesa v. Ag-Mart Produce, Inc.*, 2008 WL 2790024, at *8 (M.D. Fla. Jul. 18, 2008) (observing that "[w]hether these migrant workers worked in different locations, different hours, or for different crew leaders does not change the common issue regarding compensation, wage statements, and appropriate wage keeping."); *De Leon-Granados v. Eller & Sons Trees, Inc.,* No. 1:05-cv-1473-CC (N.D. Ga. Sept. 28, 2006) (finding commonality even though putative class members were employed by different work crews at various locations).

Notably, Defendant Ruiz acknowledged that the same practices and policies applied to all of the H-2A workers, regardless of which crew they were assigned. Therefore, the Court concludes that Plaintiffs have satisfied Rule 23(a)'s commonality requirement.

## III.    Typicality

Typicality requires that a class representative "possess the same interest and suffer the same injury as the class members." *Cooper,* 390 F.3d at 713. Thus, "the typicality

requirement is satisfied if 'the claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same theory.'" *Agan,* 222 F.R.D. at 698 (quoting *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984)). Even if the fact patterns are unique to each claim, the typicality requirement will be satisfied if the class representative and class members experienced the same unlawful conduct. *Agan,* 222 F.R.D. at 698. However, like commonality, Rule 23 does not require that all members of the class possess identical claims. *Id.* at 714.

Plaintiffs allege that Defendants failed to comply with their contractual promises regarding payment of wages and they assert that their claims are identical to those of the putative class members. Plaintiffs also assert that if any named Plaintiff is to recover, he or she will be required to show the same breach of contract based on the same factual premises.

The representative H-2A Plaintiffs all allege that Defendants breached the employment contract for the same reasons, namely, for failing to pay full hourly wages for the reasons discussed in detail herein. The named H-2A Plaintiffs and the other class members' claims arise out of the same conduct and essentially the same factual and legal bases. Therefore, the Court concludes that the H-2A Plaintiffs have satisfied Rule 23(a)'s typicality requirement.

## IV.    Adequacy of protection of class interests

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." There are two separate inquiries under this section: (1) whether there are any substantial conflicts of interest between the named representatives of

the class and the class members; and (2) whether the representatives will adequately prosecute the action. *Busby,* 513 F.3d at 1323 (citing *Valley Drug Co.,* 350 F.3d at 1189 ). This requirement serves to uncover any conflict of interest that named parties may have with the class they represent. *Amchem Products, Inc., v. Windsor,* 521 U.S. 591, 627, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "If substantial conflicts of interest are determined to exist among a class, class certification is inappropriate." *Id.* Minor conflicts alone will not defeat class certification, the conflict must be "fundamental" to the specific issues in the case. *Id.* Under this section, the Court must also consider the competency and any conflicts that the class counsel may have. *Amchem Products, Inc.* 521 U.S. at 627 n. 20, 117 S.Ct. 2231.

Plaintiffs assert that their claims are not in conflict with any of the class members. They contend that all class members will benefit from the relief sought by receiving restitution of the additional wages and reimbursements from Defendants for the costs they incurred.

The Court concludes that the representative H-2A Plaintiffs will fully and adequately represent the interests of the class and that their claims are not in conflict with any other potential class member. CCLP's argument to the contrary is devoid of merit. Further, counsel for the H-2A Plaintiffs is experienced in class action litigation and specifically in class action litigation involving migrant farm workers. Therefore, the Court determines that Plaintiffs have satisfied Rule 23(a)'s adequacy of representation requirement.

## REQUIREMENTS UNDER RULE 23(b)

As stated above, in order to have a class certified, the Representative Plaintiffs must not only satisfy Rule 23(a), but must also show that they meet one of the alternative requirements of Rule 23(b).  Plaintiffs assert that their claims in Counts V and VI satisfy the requirements for certification under Rule 23(b)(3).

For class certification to be appropriate under Rule 23(b)(3), common questions must predominate over questions that affect only individual members and the class action must be a superior method for a "fair and efficient adjudication of the controversy." *Cooper,* 390 F.3d at 722 (citing Fed.R.Civ.P. 23(b)(3)).  Thus, rule 23(b)(3) imposes two additional requirements to Rule 23(a): predominance and increased efficiency (superiority). *Id.* (citing *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1006 (11th Cir. 1997)).

## I.     Predominance

The issues raised in the class action that are subject to generalized proof and which are applicable to the class as a whole "must predominate over those issues that are subject only to individualized proof." *Babineau,* 576 F.3d at 1191 (quoting *Kerr,* 875 F.2d at 1558). "Common issues will not predominate over individual questions if, 'as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'" *Id.* at 1191 (quoting *Andrews v. Am. Tel. & Tel. Co.,* 95 F.3d 1014,1023 (11th Cir. 1996)).  A class should not be certified if it appears that most of the plaintiffs' claims have highly case-specific factual issues. *Id.*  The predominance

requirement is "far more demanding" than the commonality requirement. *Jackson,* 130 F.3d at 1005.

The Court concludes that the class claims predominate over any questions of the individual members of the putative class.  The putative class members all worked under the same employment contract, i.e., Ruiz Harvesting's clearance orders, as H-2A citrus pickers for the 2007-08, 2008-09, and/or 2009-10 seasons.  The class members seek to remedy the same legal grievances for breach of the same contracts and for failure to pay the minimum wage as a result of the kick back scheme and timekeeping adjustments made by CCLP. Notably, a determination of whether Defendants paid the minimum wage, properly reduced Plaintiffs' time by an hour per day, and reimbursed inbound and outbound travel expenses and subsistence payments "will resolve each potential class member's underlying cause of action under the breach of contract claim." *Rosario-Guerrero*, 256 F.R.D. at 629.  Similarly, a finding that Defendants did not pay the Florida minimum wage as a result of the payment of kick backs and timekeeping adjustments will resolve the claims for additional wages.

Simply put, Plaintiffs do not have to prove a variety of individual circumstances supporting the alleged breaches because Defendants' behavior was uniformly directed to all members of the putative class.  And Plaintiffs' reply points out that the damages due each class member can be readily calculated without testimony from the individual workers. Specifically, Plaintiffs contend that the damages can be computed by applying uniformly a straightforward mathematical formula based on the existing evidence such as payroll records, payroll journals, cancelled checks, and timekeeping records. *See Sacred Heart Health Sys.,*

*Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[i]ndividualized damages issues are of course least likely to defeat predominance where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods.") (internal citations omitted).

CCLP argues that class certification is inappropriate because each worker's individualized proof of compensation and the hours he worked is required to establish liability. Notably, the Eleventh Circuit has repeatedly held that individual issues relating to damages do not defeat class certification. *See Allapattah Servs.,* 333 F.3d at 1261; *Sacred Heart,* 601 F.3d at 1178.

CCLP also cites to *Luna v. Del Monte Fresh Produce (Southeast), Inc.,* 354 Fed. App'x. 422, 424 (11th Cir. Dec.3, 2009) for the proposition that if a case requires individualized proof of compensation for each worker, then common questions of law or fact do not predominate over questions affecting individual members. In *Luna,* the Eleventh Circuit held that the district court did not abuse its discretion in not certifying a class, however, the Eleventh Court also included the following language, "[w]e may have weighed the issues differently. But, '[e]ven if we would have certified a class, that does not mean the district court abused its discretion in declining to do so.'" *Id.* at 425.[5]

---

[5] It is also important to note that there was no common contract, as there is here, in *Vega v. T-Mobile, USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009). The Court further notes that the problems plaguing the proposed class in *Sacred Heart* are not present here. In *Sacred Heart*, there were substantial variations in the terms of over 300 hospital contracts that were individually negotiated, leading the court to find that "the diversity of the material terms is overwhelming." 601 F.3d at 1171-72.

## II.    Superiority of Class Action

Rule 23(b)(3) requires a finding that "[the] class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The Court looks to the four non-exclusive matters listed in Rule 23(b)(3) which are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Plaintiffs assert that it is unlikely that the individual class members would have any interest in instituting a lawsuit or in controlling their own individual actions. The class members' homes are in Mexico, they lack proficiency in the English language, they are indigent, and they seek relatively small individual damages.  Plaintiffs also state that there are no other lawsuits raising the same issues as presented in this action.  Plaintiffs also point out that it is desirable to conduct the litigation in this forum because there is personal jurisdiction over all of the Defendants in the Middle District, the cause of action arose here, and all documents pertaining to the litigation are located here.

The Court determines that the potential class members' claims are predicated on a common set of facts and concern the same employment contract.  The breaches of contract apply uniformly and each individual plaintiff will not have to testify.  Moreover, the process of bringing individual actions would be much more onerous than a class action.  Therefore,

the Court concludes that Plaintiffs have established that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CONCLUSION

The Court concludes that Plaintiffs established the requirements of Rule 23(a) and Rule 23(b)(3). Accordingly, it is hereby ORDERED and ADJUDGED that:

1.     Plaintiffs' Motion for Declaration of a Class Action and Supporting Memorandum of Law (Dkt. 55) is GRANTED.

2.     With respect to the claims set forth in Counts V and VI of the amended complaint, the Court certifies a class of:

> **All temporary foreign workers ("H-2A workers") who were employed pursuant to temporary labor certifications issued to Ruiz Harvesting, Inc. for work during the 2007-08, 2008-09 and/or 2009-10 Florida citrus harvests.**

**DONE** and **ORDERED** in Tampa, Florida on February 24, 2012.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\J-Gunlach\2-10-cv-542.mtclassaction55.wpd